The document below is hereby signed.

Signed: February 3, 2014



_S. Martin Teel, Jr._
_United States Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHAEL LAWRENCE ROSEBAR, | ) | Case No. 13-00535 |
| | ) | (Chapter 11) |
| Debtor. | ) | |

MEMORANDUM DECISION RE DAVID BROOKS'
MOTION SEEKING SANCTIONS FOR DEBTOR'S FAILURE TO OBEY
COURT ORDER TO PRODUCE DOCUMENTS AND ATTEND RULE 2004 EXAMINATION

On November 25, 2013, this court ordered that an examination by creditor David Brooks of Michael Rosebar, the debtor, take place at Stinson Morrison Hecker LLP on December 2, 2013 unless the parties agreed in writing to a different date, with the debtor to produce certain documents before the examination. The parties agreed in writing to move the examination to December 4, 2013, at 1:00 p.m. The debtor is represented by his attorney, William C. Johnson, Jr. Johnson and the debtor (on advice of Johnson) failed to appear at the scheduled time, and Brooks has filed a *Motion Seeking Sanctions for Debtor's Failure to Obey Court Order to Produce Documents and Attend Rule 2004 Examination* seeking to recover from Johnson the expenses he incurred because of the debtor's failure to appear. The *Motion* will be granted.

I

The court reporter Brooks intended to use for the examination was unavailable or became unavailable. As a result, at some point before 9:13 a.m. on December 2, 2013 (consistent with an e-mail of that date and time), Brooks left Johnson a voice mail message in which he noted that his court reporter had become unavailable. The additional content of that voice mail message drives the dispute now before the court. Johnson claims that Brooks left him a message that Brooks was having difficulty finding a court reporter, asked Johnson for his recommendation regarding a possible court reporter, and cancelled the December 4th examination based on the inability to find a court reporter. Brooks claims that, although he may have asked Johnson for a recommendation for a court reporter because he was having trouble finding one, he never said the examination was cancelled. There is no email or other recorded evidence documenting what Brooks told Johnson about the court reporter and whether he indicated in that message that the December 4th examination was cancelled.

On December 2, 2013, at 9:13 a.m., Johnson sent Brooks an e-mail stating "I received your message regarding the Court Report's [sic] conflict. I'm available Friday, December 6 at 1:00 PM. Please advise." Less than two hours later, on December 2, 2013, at 10:47 a.m., Brooks sent Johnson an email stating: "I was able to secure a different reporter so the examination will

2

take place at 1 pm on Wednesday, December 4 as previously discussed." Johnson did not reply to this email until December 3, 2013, at 10:41 p.m. (the night before the examination date),[1] advising Brooks for the first time that he viewed Brooks as having cancelled the December 4 date for the examination. In this reply e-mail, Johnson said that after Brooks' "initial cancellation," Johnson scheduled another matter and told Rosebar that the examination was cancelled, and therefore, he and Rosebar would not be able to make the examination on the following day. Brooks responded by email on December 3, 2013, at 11:23 p.m., denied that there had been a cancellation, and stated that "I asked if you could suggest a court reporter, because mine was not available," and noting his e-mail of December 2, 2013, which had advised Johnson that he (Brooks) had been able to find a reporter (so that the examination would go forward on December 4). In the same e-mail of December 3, 2013, at 11:23 p.m., Brooks told Johnson that the court reporter had already been paid for, so the examination was still going forward unless Johnson wished to reimburse Brooks' expenses. Johnson responded to that email at 5:43 a.m. on December 4, 2013, stating that the examination must be re-scheduled, but Johnson did not agree to reimburse Brooks'

---

[1] At the hearing, Johnson testified that he does not know why, but not until the evening of December 3, 2013, did he receive Brooks' email of the morning of December 2, 2013, confirming that the examination was still going forward on December 4.

3

expenses.

The parties then engaged in a dispute over whether Brooks would still have to pay the court reporter's deposit if the examination was re-scheduled rather than cancelled.  Johnson said that he would call the court reporter to make certain that the costs were transferred to the next scheduled examination date. Johnson alleges that he spoke to the scheduling coordinator for the court reporter and cancelled the examination.  He then emailed Brooks that there would be no charge for the cancellation, because the examination had been re-scheduled. This was inconsistent with the court reporter company's confirmation of the booking, which stated "Remember, fees will be incurred for cancellations not received by 5:00 p.m. today [December 3, 2013]."  Moreover, the court reporter company called Brooks and told him that because the attempted cancellation was made after 5:00 p.m. on the day preceding the examination, Brooks would still be charged the cancellation fee even if he allowed Johnson's attempt to cancel the deposition to be effective and the examination was rescheduled.  Brooks informed Johnson by an e-mail of December 4, 2013, at 9:25 a.m. that the court reporter company did *not* agree to waive the cancellation charge, and that he was proceeding with the examination at the scheduled time of December 4, 2013, at 1:00 p.m.

Brooks and the court reporter appeared for an examination of

4

the debtor at the scheduled time of December 4, 2013, at 1:00 p.m., but Johnson and the debtor did not appear. The court reporter company charged Brooks $160 for appearing for the examination.

                                II

The evidence is clear and convincing that there was an unjustified failure to comply with the order requiring the debtor to appear for examination on December 4, 2013 (the parties had agreed to in writing), unless there was a later written agreement fixing a different date. The court finds Brooks' testimony about the content of the message regarding his difficulties in finding a court reporter to be highly credible, namely that Brooks' message to Johnson did *not* state that Brooks was cancelling the December 4th examination, but instead requested a recommendation for a court reporter in an effort to hold onto the December 4th examination date. Brooks was having trouble finding a court reporter and contacted several attorneys to ask for recommendations. He was confident that in Washington, D.C., with that city's large number of attorneys who use the services of court reporters, he would be able to find one. He contacted not only Johnson, but other attorneys for their recommendation regarding finding a court reporter. He cannot remember the details of what he said to Johnson, but he never told Johnson that he was cancelling the examination, and that he was seeking

5

to move it to a different date. Although a new date would be necessary if Brooks could not find a court reporter, Brooks intended to hold onto the December 4th date unless he was unable to find a court reporter.

At the hearing, Johnson at first testified that he had received an email from Brooks cancelling the hearing, but upon further questioning, Johnson stated that it was probably a voicemail and not an email message. This testimony strongly suggests that Johnson cannot remember the precise details of Brooks' message. It appears that Johnson sloppily and unreasonably misunderstood Brooks' initial message about the need to find a court reporter as indicating that Brooks was cancelling the examination date of December 4. The court's order requiring that any change in the examination date be agreed to in writing was designed precisely to avoid any such misunderstanding of oral communications. Despite that order (which rendered any oral cancellation ineffective), and the obvious possibility that he had misunderstood Brooks' oral message, Johnson never attempted to obtain a written agreement that the examination date of December 4 was being changed.

Johnson's e-mail message of 9:13 a.m. on December 2, 2013, in response to Brooks' initial message about the court reporter did not indicate that he understood that the December 4 date had been cancelled. Instead, it addressed a date that would work if

Brooks was unable to find a court reporter for December 4: "I received your message regarding the Court Report's [sic] conflict. I'm available Friday, December 6 at 1:00 PM. Please advise." Only if Brooks knew that it was impossible to find a court reporter for the scheduled date of December 4 would it have made sense for him to drop that date. At best, Brooks may have asked Johnson for alternative dates in the event that Brooks was unable to find a court reporter for December 4.

Brooks sent an email on December 2, 2013, at 10:47 a.m., stating: "I was able to secure a different reporter so the examination will take place at 1 pm on Wednesday, December 4 as previously discussed." This supports Brooks' testimony that he was having trouble finding a court reporter, but that he had not told Johnson that the examination was cancelled. If he had told Johnson that he was cancelling the December 4th date (and was seeking to move it to a later date), it does not make sense that he would have arranged for the court reporter to appear on December 4.

Johnson could have obtained a re-scheduling of the examination date by agreeing that he would pay any court reporter expense incurred incident to the cancellation of the examination and the rescheduling of it for a different date with the same court reporter company. Johnson failed to agree to that, and his reckless conduct in that regard was tantamount to bad faith

7

because no cancellation could have occurred unless the parties agreed in writing that the December 4 date would be cancelled and rescheduled. Brooks reasonably proceeded to have the court reporter appear for the examination at the scheduled time.

After the debtor and Johnson failed to appear for the examination on December 4, 2013, Brooks e-mailed Johnson asking if he was willing to pay the cancellation fee. Johnson failed to indicate that he was willing to pay the fee. Brooks consulted with an attorney regarding how to proceed to address the debtor's refusal and failure to appear on December 4, 2013, for the examination. That led to Brooks filing his *Motion* seeking sanctions on December 16, 2013. In addition to the $160 court reporter expense, Brooks testified that his attorney performed at least four hours of work in consulting with him regarding how to address the debtor's failure to appear on December 4 for the scheduled examination, and Brooks asserts that he incurred at least $600 in attorney's fees on account of that work.

III

Brooks seeks sanctions by pointing to Fed. R. Civ. P. 37. Under Fed. R. Bankr. P. 7037 and 9014, Rule 37 applies to discovery frustrated in an adversary proceeding or contested matter. If the scheduled examination here had been a deposition in an adversary proceeding or contested matter, Rule 37 would clearly require imposing sanctions against Johnson. The Rule

2004 examination here was commenced by a motion that constituted a contested matter, but that motion was granted without the necessity of any discovery to reach an adjudication. Accordingly, the examination is not one to which Rule 37 applies. Nevertheless, Rule 37 is an appropriate guide for determining whether to impose sanctions in this matter as otherwise authorized in this proceeding.

The court's authority to impose such sanctions is as follows. In relevant part, 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." In addition, a court has inherent powers to assure compliance with its orders. Pursuant to these two sources, the court, in appropriate circumstances, is authorized to impose sanctions against an attorney whose advice results in her client failing to comply with an order for a Rule 2004 examination. The court alternatively may impose such sanctions pursuant to 28 U.S.C. § 1927.

### A. *Imposition of Sanctions Under § 105(a) and Court's Inherent Powers*

Pursuant to § 105(a) and the court's inherent powers, the court is empowered to impose sanctions to assure compliance with

subpoenas or orders for Rule 2004 examinations.[2]  It has long been recognized that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535, 16 L. Ed. 2d 622 (1966).  When an attorney advises a client not to comply with a court order, she may, with exceptions of no relevance here, be held in civil contempt.  *Fid. Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 58 (1976).  Good faith is not a defense to civil contempt.  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S. Ct. 497, 93 L. Ed. 599 (1949).

Brooks has shown by clear and convincing evidence that Johnson is in civil contempt in advising the debtor not to appear for the examination on December 4, 2013.  The court's order directing the debtor to appear for an examination was clear and unambiguous in requiring the debtor to appear for an examination on the date the parties agreed to in writing, December 4, 2013.  The evidence is clear and convincing that there was a violation of that order.

Nevertheless, the court's power under § 105(a) and its inherent powers must be exercised with restraint.  It is in that regard that Rule 37 is pertinent to imposing sanctions against an attorney for advising his client not to appear for a Rule 2004

---

[2]  I need not address whether § 105(a) is merely a codification of the principle that the courts have inherent powers to enforce compliance with its orders.

examination, for the provisions of Rule 37 provide a useful guide for the court's exercise of its discretion in imposing such sanctions.  See *Hockler v. Lichtman*, 2009 WL 1788371 (S.D.N.Y. June 23, 2009) (Rule 37 is a guide for imposing sanctions); *Grand Street Realty, LLC v. McCord*, 2005 WL 2436214, at *3-4 (E.D.N.Y. 2005 Sept. 30, 2005).  Rule 37(d)(3) provides that if the court does not impose other sanctions against a party who failed to appear for its own deposition:

> the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Using Rule 37(d)(3) as a guide, an imposition of sanctions against Johnson is appropriate.

First, the debtor's failure to appear, and Johnson's advising him not to appear, was not substantially justified. Brooks never cancelled the deposition, either in writing or orally, and Johnson was entirely unreasonable in treating Brooks' message regarding his court reporter being unavailable, and requesting any suggestions Johnson had regarding finding another court reporter, as a notice that Brooks was cancelling the deposition.  Moreover, despite the court's order requiring that the examination be held on a date agreed to by the parties in writing, Johnson never sought and never obtained a written agreement that the examination would not be held on December 4,

11

2013, as previously fixed in writing by the parties.

Second, other circumstances do not make an award of expenses unjust:

- Brooks offered to reschedule the deposition if Johnson would agree to pay any reporter expense incurred by Brooks as a result of cancelling and rescheduling the examination at a later date.  Johnson failed to accept that offer, which would have obviated any dispute over whether Brooks had cancelled the examination, and would have protected Johnson when he should have realized that his assertion that Brooks had cancelled the examination might be in error, and when Johnson had disregarded the order directing the examination by never obtaining a written agreement to change the December 4 date.

- Johnson maintained that no fee would be incurred if the court reporter's appearance were cancelled and rescheduled, but if Johnson had been right in that regard, he could simply have said "I don't think any fee will be incurred, but if there is a fee incurred, I will pay it."

- Without any agreement in place regarding paying a cancellation fee, Brooks was entirely reasonable in proceeding to hold onto the scheduled examination date

   and time, otherwise he would not be entitled to recover his expense.

- After he incurred the fee for the court reporter's appearance, Brooks sought to have Johnson pay the fee, but Johnson failed to agree to pay the fee, thus necessitating Brooks' pursuing advice of counsel and filing the *Motion* to impose sanctions.

The evidence clearly and convincingly establishes that, even applying the discretion that would exist under Rule 37 if the examination had been a deposition in a contested matter or an adversary proceeding, that discretion does not warrant declining to impose sanctions against Johnson.

  Even if the court's imposition of sanctions against Johnson under § 105(a) or the court's inherent powers required a showing that Johnson's conduct was tantamount to bad faith, Johnson's disregard of the plain terms of the order authorizing the Rule 2004 examination establishes conduct tantamount to bad faith such as to satisfy that requirement.

  B. *Imposition of Sanctions Pursuant to § 1927*

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions may be imposed under § 1927 when the attorney recklessly disregards a court order, thus unreasonably and vexatiously multiplying the proceedings. *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988) ("'While the language of § 1927 suggests deliberate misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim.'") (quoting *Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C. Cir. 1986)); *In re Greater Se. Cmty. Hosp. Corp. I*, 2010 WL 3123086, at *2 (Bankr. D.D.C. Aug. 9, 2010). As held in *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007), "the phrase 'unreasonably and vexatiously' demands an objective analysis and . . . § 1927 does not require a malicious intent or a bad purpose." The attorney's subjective bad faith is not a necessary prerequisite to a § 1927 award: the inquiry is whether the attorney's conduct, viewed objectively, shows that she acted unreasonably and vexatiously. *Id.* Accordingly, "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Id.* at 1241.

In any event, Johnson's disregard of the terms of the court's order requiring the examination to proceed on a date agreed to in writing was sufficiently reckless and egregious that his conduct was tantamount to bad faith. Moreover, he refused to

agree to pay any cancellation fee (if, contrary to his belief, one was going be incurred if the court reporter's attendance on December 4, 2013, was cancelled and the attendance rescheduled), and that refusal also was tantamount to bad faith.

As in the case of § 105(a) and the court's inherent powers, the provisions of Rule 37 are a useful guide in applying § 1927 with restraint in the case of an attorney who advises his client to disregard an order directing the client to appear for a Rule 2004 examination.  The previous Rule 37 analysis (determining that sanctions are appropriate under § 105(a) and the court's inherent powers) mandates imposing sanctions against Johnson under § 1927 for having advised his client not to appear for the scheduled examination.  The clear and convincing evidence establishes that Johnson acted unreasonably and vexatiously in viewing the December 4 examination date as having been cancelled. The consequence was that he has unnecessarily multiplied the proceedings.  Further, no circumstances exist that would make an imposition of sanctions unjust.

                                IV

Brooks is entitled to recover from Johnson his expenses and any reasonable attorney's fees he incurred because of the debtor's failure (on Johnson's advice) to appear for examination on December 4, 2013.  Brooks incurred a $160.00 fee with respect to the court reporter, and he consulted with an attorney for

advice regarding how to proceed.  Although Brooks is proceeding pro se in this case, he is entitled to recover reasonable attorney's fees he incurred in consulting with that attorney (who is a member of the bar of the district court of which this court is a unit) regarding how to address the debtor's non-compliance with the order for a Rule 2004 examination.  *See Blazy v. Tenet*, 194 F.3d 90, 94 (D.C. Cir. 1999).  Brooks has not submitted a statement of his attorney regarding the tasks she performed on his behalf and the time she spent on those tasks in providing Brooks advice regarding the steps he could take in light of the debtor's failure to appear for the December 4th examination.  Rather than requiring Brooks in the first instance to have the attorney prepare such a statement for Brooks to submit to the court (which might result in Brooks' incurring further fees for the preparation of such a statement), Johnson has asked that he be allowed to consult informally with the attorney to see if he can satisfy himself as to whether the attorney performed services for Brooks relating to the debtor's non-appearance on December 4, 2013, for which reasonable attorney's fees were incurred by Brooks in the amount of at least $600.  He has asked to have until February 7, 2014, to file a statement in that regard.  If he disputes that Brooks incurred $600 in reasonable fees, then Brooks will be required to submit a statement of his attorney demonstrating that Brooks incurred at least $600 in reasonable

16

fees, with Brooks to be entitled to recover (beyond reasonable attorney's fees he has previously incurred) any reasonable attorney's fees charged for the preparation of such a statement.

V

In light of the foregoing, David Brooks is entitled to entry of an order directing that he recover of William C. Johnson, Jr., the $160 court reporter expense he incurred for the examination on December 4, 2013, when the debtor failed to appear, and any reasonable attorney's fees he incurred in obtaining advice as to how to proceed in light of the failure.  An order follows to address the procedures for fixing the amount of reasonable attorney's fees Brooks is entitled to recover.

[Signed and dated above.]

Copies to: David Brooks; recipients of e-notification.